[Cite as *M.K.F. v. A.S.F.*, 2026-Ohio-2540.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

M.K.F., :

      Plaintiff-Appellee/ :
      Cross-Appellant,            No. 115454

      v. :

A.S.F., :

      Defendant-Appellant/ :
      Cross-Appellee. :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 2, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-21-384875

---

### *Appearances:*

Taft Stettinius & Hollister LLP and Jill Friedman Helfman, *for appellee/cross-appellant.*

Stafford Cruz Law Company and Nicole A. Cruz, *for appellant/cross-appellee.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Appellant/cross-appellee A.S.F. ("Husband") challenges the judgment of the trial court granting a judgment of divorce. He raises five assignments of error for our review:

> 1. The trial court erred and abused its discretion by determining that the duration of the parties' marriage is from June 28, 2008, through May 22, 2023.
>
> 2. The trial court erred and abused its discretion by using the Wife's untimely expert report for determining the value of the marital residence and by failing to accept the Husband's offer to purchase the marital residence premised upon a value of $600,000.
>
> 3. The trial court's determination of separate property and admission of previously excluded evidence after the completion of trial is an abuse of discretion and resulted in an inequitable division of property.
>
> 4. The trial court erred and abused its discretion when calculating Husband's temporary support arrearages.
>
> 5. The trial court erred and abused its discretion by issuing an unreasonable and inequitable amount and term of spousal support under Ohio Revised Code Section 3105.18.
>
> 6. The trial court erred and abused its discretion in setting arbitrary time limits on the presentation of Husband's case in chief after the completion of Wife's case in chief.

{¶ 2} Appellee/cross-appellant M.K.F. ("Wife") filed a cross-appeal, raising one assignment of error:

> The trial court abused its discretion when it delegated its obligation to determine the marital and separate property portion of Husband's retirement assets to a third party.[1]

---

[1] Although Wife is named in the caption of this case as "M.K.F.," Husband refers to her as "M.A.K." in his briefing.

{¶ 3} After a thorough review of the record and applicable law, we find that the trial court did not err in (1) declining to use the date of the parties' separation as the de facto termination of the marriage, (2) admitting Wife's expert's report regarding the value of the marital home, (3) admitting and relying upon Wife's exhibit regarding the down payment made by Wife for the marital residence, (4) determining Husband's temporary support arrearages, (5) awarding Wife spousal support for a term of 28 months, and (6) imposing time limits on the presentation of evidence after the trial had already been conducted on eight separate occasions over a period of two years.

{¶ 4} We further find that the court did not delegate its obligation to determine the marital and separate property portion of Husband's retirement assets to a third party.

{¶ 5} We therefore overrule all of the assignments of error raised in the appeal and the cross-appeal and affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 6} The parties were married on June 28, 2008, and had two children as issue of the marriage. The parties separated on January 20, 2021, when Husband moved into his own apartment.

{¶ 7} Wife filed for divorce in April 2021 and simultaneously moved for temporary support. The court granted Wife temporary support in July 2022; it was later modified in November 2024. Husband asserted numerous challenges to the temporary support orders.

{¶ 8} The trial in this matter occurred on 11 separate days between May 2023 and March 2025. The court heard testimony from Wife, Husband, Wife's real-estate appraiser, Wife's boyfriend, a woman who had dated Husband during the parties' separation, several police officers, and Wife's counsel as to attorney fees. Nearly 200 exhibits were admitted.

{¶ 9} Prior to the final three hearing days, the court issued an order implementing time restrictions on both parties. Wife was permitted two hours in which to conclude her case-in-chief, and Husband was allowed five hours to present his case. At the time the limits were imposed, the parties had already appeared before the court on eight separate occasions, either presenting testimony or attempting to settle the matter. With the exception of the shared parenting plan, the attempts to resolve the matter were fruitless.

{¶ 10} Following the conclusion of the trial, the court issued a "Judgment Entry for Divorce" that determined all issues between the parties. The court determined under R.C. 3105.171(A)(2) that the duration of the marriage was from June 28, 2008, through May 21, 2023, which was the first day of the final hearing.

{¶ 11} With respect to the division of marital property, the court found that the parties had indicated full and complete disclosure of all marital and separate property and had had the opportunity to value and verify the same. The court noted that "[n]o evidence was presented to establish that an equal division of marital property would be inequitable. Therefore, the division of marital property should be substantially equal." (Judgment entry for divorce p. 11.)

{¶ 12} The court found the following to be marital property: the marital residence, certain vehicles, certain money-market accounts, checking and savings accounts, and stock options.[2] The court found that the parties each had retirement accounts and ordered that the marital portion of each account was to be divided equally between Husband and Wife.

{¶ 13} The court noted that the parties had not agreed as to the separation of their furniture, but neither party had submitted a list of furniture or other items from the marital residence as required by the court's first pretrial order. Accordingly, the court declined to further divide the personal property.

{¶ 14} The court ordered that Wife's State Teachers Retirement System account, earned prior to the marriage, along with Wife's health savings account, were her separate property. The court further found that $51,200 was Wife's traceable premarital contribution to the marital home and therefore was also her separate property. The court determined that Husband would retain his 1969 Camaro and his Schwab account as his separate property. The parties stipulated that their individual bank accounts would each remain the property of that individual.

---

[2] It is unnecessary to specify the particular property because there are no issues raised as to its division.

{¶ 15} Finally, the court ordered Husband to pay spousal support to Wife of $1500 per month for 28 months.[3]

{¶ 16} Husband filed the instant appeal, and Wife cross-appealed.

## II. Law and Analysis

### A. Husband's Appeal

{¶ 17} We review a trial court's determination in domestic relations cases for an abuse of discretion. *L.G. v. R.G.,* 2026-Ohio-258, ¶ 24 (8th Dist.), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). A court abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. As further explained by the Ohio Supreme Court:

> Stated differently, an abuse of discretion involves more than a difference in opinion: the "'term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" *State v. Jenkins*, 15 Ohio St.3d 164, 222, 473 N.E.2d 264 (1984), quoting *Spalding v. Spalding*, 355 Mich. 382, 384, 94 N.W.2d 810 (1959). For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that "'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *Id.*, quoting *Spalding* at 384-385.

*State v. Weaver*, 2022-Ohio-4371, ¶ 24.

{¶ 18} "Domestic relations courts must have discretion to do what is equitable upon the facts and circumstances of each divorce case." *D.S.K. v. T.J.K.*,

---

[3] The parties entered into an agreed judgment entry regarding shared parenting, and the court ordered Husband to pay child support. The parties have not assigned any errors relating to the child-support award or any other parenting issue.

2025-Ohio-1372, ¶ 4 (8th Dist.), citing *Booth* at 144. Consequently, a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment. *Newmann v. Newmann,* 2012-Ohio-591 (8th Dist.), citing *id.* at *id.*

### 1. Marriage Duration

{¶ 19} In his first assignment of error, Husband argues that the trial court erred by determining that the termination date of the marriage was the date the trial commenced, May 22, 2023. Husband argues that the de facto termination date should have been the date of the parties' separation, January 20, 2021. He contends that the parties have lived separately since that date without any attempts at reconciliation. He asserts that they had separated their financial accounts and began filing separate tax returns in 2022. He further notes that Wife returned to her maiden name while the divorce was pending and has been in a romantic relationship for "a significant duration."

{¶ 20} Normally, "[t]he date of the final hearing in a divorce proceeding is presumed to be the termination date of the marriage, unless the court determines that the use of that date would be inequitable in determining [what constitutes] marital property." *Kobal v. Kobal*, 2018-Ohio-1755, ¶ 19 (8th Dist.), citing R.C. 3105.171(A)(2). If the "court determines that a de facto termination of the marriage occurred earlier in time, and that using the date of the final hearing as the termination date would be inequitable, the court may, in its discretion, select a

different date it considers equitable." *Saks v. Riga*, 2014-Ohio-4930, ¶ 8 (8th Dist.),

citing *Berish v. Berish*, 69 Ohio St.2d 318, 321 (1982).

{¶ 21} This court has "cautioned that a de facto date should not be used

unless the 'evidence clearly and bilaterally shows that it is appropriate based upon

the totality of the circumstances.'" *Brown v. Brown*, 2014-Ohio-2402, ¶ 9 (8th

Dist.), quoting *O'Brien v. O'Brien*, 2008-Ohio-1098, ¶ 41 (8th Dist.). "The trial court

has broad discretion in choosing the appropriate marriage termination date, and

this decision should not be disturbed on appeal absent an abuse of that discretion."

*Smith v. Smith*, 2022-Ohio-299, ¶ 25 (8th Dist.), citing *Berish* at 321.

{¶ 22} This court has noted that *Dill v. Dill*, 2008-Ohio-5310 (3d Dist.), set

forth a nonexclusive list of factors to consider when analyzing the equitability of de

facto termination of marriage dates:

> (1) the parties separated on less than friendly terms, (2) the parties
> believed the marriage ended prior to the hearing, (3) either party
> cohabited with another person during the separation, (4) the parties
> were intimately involved during the separation, (5) the parties lived as
> husband and wife during the separation, (6) the parties maintained
> separate residences, (7) the parties utilized separate bank accounts or
> were/were not financially intertwined (with the exception of temporary
> orders), (8) either party attempted to reconcile, (9) either party
> retained counsel, and (10) the parties attended social functions
> together or vacationed together.

*Id.* at ¶ 11. "[T]he *Dill* [C]ourt stated that none of the factors are dispositive; 'rather,

the trial court must determine the relative equities on a case-by-case basis.'" *W.G.*

*v. D.G.*, 2024-Ohio-1690, ¶ 15 (8th Dist.), quoting *Dill* at *id.*

{¶ 23} In the instant matter, the trial court found that the termination date of the marriage was the first day of the final hearing, May 21, 2023. Relative to this determination, the court found that the parties had separated in January 2021 but had "operated as an economic unit throughout most of the pendency of the matter." (Judgment entry for divorce p. 6.)

{¶ 24} The record indicates that since the parties' separation, they made no attempts to reconcile. However, the record also establishes that the parties had a joint bank account that they both used until June 2022. There was testimony that the parties continued to deposit their paychecks into the joint account and to use that account to pay for marital expenses. Husband acknowledges that they filed joint tax returns until 2022. Accordingly, the parties' financial entanglement lasted long after Husband moved out of the marital residence.

{¶ 25} In light of the totality of the circumstances and the evidence presented at trial, we cannot find that the trial court abused its discretion in declining to use the date of separation as the de facto marriage termination date. Husband's first assignment of error is overruled.

### 2. Marital Residence

{¶ 26} In his second assignment of error, Husband argues that the trial court erred by accepting and relying upon Wife's untimely expert report and testimony regarding the value of the marital home.

{¶ 27} The trial court's June 6, 2022 judgment entry stated that expert reports were to be exchanged "no later than 30 days before trial." Wife asserts that

she filed a "Notice of Submission of Expert Reports," on April 21, 2023, which was 31 days prior to the first date of trial. Husband contends that while Wife claims that the expert report was timely exchanged, the only evidence of this was a cover letter asserting that the report was sent via email. Husband maintains that Wife did not produce a copy of the alleged email.

{¶ 28} With regard to this issue, the court stated as follows:

> [Husband] requested that the expert and his report be excluded because the report was not filed prior to the commencement of the trial. The Court notes that [Husband] did not file an updated Financial Disclosure form until ordered to do so mid-trial. Given the scattered trial days over 2 years, and the lack of compliance to the Court's orders generally, the Court declines to grant [Husband's] motion as to this expert which exclusion is within the discretion of the Court pursuant to this Court's final pretrial and trial order (issued June 6, 2022).

(Judgment entry for divorce p. 7.)

{¶ 29} "A trial court's decision to admit or exclude evidence, including expert testimony, will not be disturbed absent an abuse of discretion that causes material prejudice." *Braxton v. Kilbane*, 2017-Ohio-185, ¶ 9 (8th Dist.), citing *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66 (1991).

{¶ 30} A review of the record and transcript in this matter reveals that the court exercised infinite patience in a case involving combative counsel and multiple missteps by both parties. While the court did not make a determination as to whether Wife's expert report was timely submitted, the court was permitted to use its discretion to determine whether the expert testimony and report could be

admitted.  We cannot say that the trial court abused that discretion in allowing the report and testimony.

{¶ 31} Husband further argues that the trial court erred by relying upon Wife's expert's appraisal for the valuation of the marital home.  Wife's expert stated in his report and testified that the fair market value of the marital residence at the time of the trial was $467,000.

{¶ 32} Husband asserts that the trial court failed to consider that he had testified that he was willing to purchase the property for $600,000.  Husband maintains that he presented testimony and evidence that the property was valued at between $529,000 and $621,000.  However, the evidence presented by Husband in support of his claimed valuation were printouts from certain real estate websites to wit: Zillow, Redfin, and Trulia.  The court characterized these documents as "computer-generated internet valuations" and declined to consider them.

{¶ 33} "Trial courts have discretion to determine the value of property, but its valuation must be based on evidence." *A.E. v. J.E.,* 2024-Ohio-2644, ¶ 54 (8th Dist.), citing *McCoy v. McCoy*, 91 Ohio App.3d 570, 578 (8th Dist. 1993).  We find no abuse of discretion in the court's decision not to consider the questionable evidence presented by Husband and instead relying upon the only other evidence before it — the valuation presented by Wife's expert.  Husband's second assignment of error is overruled.

## 3. Division of Property

{¶ 34} In his third assignment of error, Husband argues that the trial court erred in determining that Wife had a separate-property interest in the marital home in the amount of $51,200. Husband asserts that during the trial, the court excluded Wife's exhibit No. 5, which reflected three checks that Wife testified she had used to pay the builders of the marital home. However, the court ultimately considered the exhibit in its division of property determination. Husband argues that because the exhibit was excluded during trial, he did not cross-examine Wife about it or present any evidence to rebut the exhibit.

{¶ 35} During Wife's direct testimony, she was asked about exhibit No. 5. Wife testified that the exhibit consisted of copies of checks written from her personal bank account at that time that she had paid to the builder of the marital home as a lot deposit and down payment. (Tr. vol. II p. 114.) Husband objected to the exhibit, arguing that Wife had not noted any separate property on her financial disclosure forms prior to trial. The court determined that Wife could not use the exhibit at trial. (*Id.* at p. 118.)

{¶ 36} The court later stated in the judgment entry for divorce:

[Wife] testified that the $51,200 downpayment for the marital residence to Ream Builders which was made prior to the marriage and from [Wife's] separate individual checking account in three payments in a traceable premarital asset. [Wife] testified that prior to the marriage, she was the higher wage earner. [Husband] cross-examined [Wife] on this issue, but did not change her testimony nor did [Husband] provide alternate evidence. The Court finds that [Husband] never testified that he made any of the downpayment. [Wife] additionally offered Exhibit 5 which included copies of the three checks

amounting to $51,200. [Husband] objected to Exhibit 5 during [Wife's] direct examination, arguing that [Wife] failed to include this amount on her Financial Disclosure forms. The Court excluded this Exhibit based on the assertions of [Husband]. Upon review of all of the Financial Disclosure forms, the Court finds that [Wife] disclosed her above accounts, but did not disclose the downpayment on her Financial Disclosure forms. The Court finds that [Husband] disclosed his Camaro, but did not disclose his Schwab account or his premarital interest in his Chevron retirement. [Husband] cannot have it both ways, he cannot exclude additional separate property of [Wife's] not on the Financial Disclosure forms while including additional separate property of his own not on his forms. The Court admits Exhibit 5. Therefore, the Court finds that $51,200 is a traceable premarital contribution to the marital home.

(Judgment entry for divorce p. 6.)

{¶ 37} In determining whether assets are marital or separate, the trial court is governed by R.C. 3105.171. Marital property generally includes all property acquired by either party during the marriage as well as the appreciation of separate property because of the labor, monetary, or in-kind contributions of either party during the marriage. R.C. 3105.171(A)(3)(a)(i) and (iii). "Property acquired during a marriage is presumed to be marital property, unless it can be shown to be separate." *Victor v. Kaplan*, 2020-Ohio-3116, ¶ 34 (8th Dist.), citing *Johnson v. Mills*, 2015-Ohio-4273, ¶ 18 (8th Dist.).

{¶ 38} While the court did exclude Wife's exhibit No. 5 at trial but then admitted it and relied upon it, the exhibit was not the only evidence used by the court in determining the $51,200 down payment was Wife's separate property. Wife testified as to the downpayment and was cross-examined by Husband regarding the same, with no change in Wife's testimony. Indeed, Wife testified as to three different

payments made from her personal account to the builders of the marital residence. She testified that these payments were made during the summer of 2007 and that Husband did not use any of his own funds toward the down payment. (Tr. vol. II p. 119-121.) In addition, Husband did not testify that he had made any of the down payment.

{¶ 39} We cannot find that the trial court erred in its determination that the $51,200 down payment toward the marital home was Wife's traceable separate property. Husband's third assignment of error is overruled.

### 4. Temporary Support Arrearages

{¶ 40} In his fourth assignment of error, Husband argues that the court erred in finding that he owed temporary support arrearages when he had presented testimony and evidence that he had *overpaid* temporary support and was actually entitled to a reimbursement from Wife.

{¶ 41} There were various orders implementing, modifying, and rescinding temporary child and spousal support throughout the pendency of this case. At some point, Husband believed that he had overpaid and reduced his payment to only $200 per month. The court noted in the judgment entry for divorce that the parties shared a joint bank account that was used for expenses. The account was closed on June 1, 2022. The court therefore found that the temporary support orders should commence June 1, 2022.

{¶ 42} Husband had argued that the temporary support orders were incorrect because the wrong income was used for Wife. The court noted in its

judgment entry for divorce that the order was based off of the 2021 W-2's of both parties. The court further stated that the temporary support issue was reheard with updated income of both parties.

{¶ 43} The court found that Husband's income did not decrease during the proceedings but that Wife's income increased; however, "at no time did [Husband] not earn more than double the income of [Wife]." The court noted that the increases to Wife's income were considered in the various support orders.

{¶ 44} The court provided the following figures to justify its arrearage amount:

> The temporary order for child support commenced June 1, 2022, for $3050 through December 11, 2023, or 18.35 months times $3050 = $55,967.50. The temporary order for child support from December 12, 2023, to February 20, 2025, was $2550 per month, or 14.32 months times $2550 = $36,516.
>
> The temporary order for spousal support commenced June 1, 2022, was $2800 through December 11, 2023, or 18.35 months times $2800 = $51,380. The temporary spousal support was modified to $1500 per month commencing December 12, 2023. From December 12, 2023, to February 20, 2025, there were 14.32 months, or 14.32 times $1500 = $21,480. Therefore, the total amount of support due from June 1, 2022, to February 20, 2025, was $165,343.50. The OCSS-CSEA records (Plaintiff's Ex 145) indicate payments received as of that date of $130,803.46. This results in a temporary support arrearage as of February 20, 2025, of $34,540.04.
>
> The Plaintiff testified that there were expenses that the parties should have shared or that Defendant should have paid. Pursuant to the above orders, from June 1, 2022, to December 12, 2023, the Plaintiff was obligated for 20% and defendant was obligated for 80% of the children's extraordinary medical expenses, from December 12, 2023, to February 20, 2025, the Plaintiff was obligated for 30% and Defendant for 70% of the children's extraordinary medical expenses which are defined in those orders. In addition, the Defendant was

ordered to pay the mortgage including real estate taxes and homeowners' insurance until August 1, 2024. He was also ordered to pay the children's day care for both children until they started school. The Defendant did not fully comply with these orders. The Plaintiff testified and itemized the unpaid expenses on Plaintiffs' Ex. 145(B). The direct payment of $8000 was credited against those expenses. The Defendant's unpaid share of those expenses equal[s] $30,688.53.

The total temporary support arrearage as of February 20, 2022, is $65,228.57.[4]

(Judgment entry for divorce p.5.)

{¶ 45} In his brief, Husband sets forth the numerous ways in which he believes he is actually owed money for overpayment: (1) Wife's income had increased to over $100,000 while the temporary support order was premised upon her income of $83,930; (2) Wife received reimbursements for her cell phone and the lease of her BMW; (3) Husband deposited all of his income into the joint account, and Wife used the funds to pay her personal expenses and all expenses for the children; (4) Wife continued to charge expenses on Husband's Discover credit card for her benefit; (5) Wife withdrew $92,398.85 from the parties' joint account between April 2021 and June 2022 and used the funds to pay for personal expenses that only she had been ordered to pay; (6) Wife made significant charges on Husband's credit card for expenses that she had been ordered to pay, totaling $83,754.11; and (7) Wife paid $12,742.95 to her attorney from the joint account. Husband asserts that he should have received a credit for the payment of temporary support in the amount of $188,895.91.

---

[4] We presume that there is a typo and that the court actually meant February 20, 2025.

{¶ 46} Husband cites no law or authority that the trial court violated in determining the amount of arrearages. This is simply an issue of which evidence the trial court believed. It is well settled that when testimony is in dispute, we defer to the trier of fact's credibility determination. *Calanni v. Kolodny*, 2018-Ohio-1289, ¶ 15 (8th Dist.), citing *Fanous v. Ochs*, 2013-Ohio-1034, ¶ 18 (8th Dist.). "The trier of fact 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Smith*, 2022-Ohio-299, at ¶ 28 (8th Dist.), quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). The reviewing court is therefore "'guided by a presumption that the findings of the trier of fact were indeed correct.'" *Id.*, quoting *id.* The trial court apparently did not find Husband credible on this issue and found no merit to his assertions.

{¶ 47} Husband has failed to show error in the court's arrearage determination, and his fourth assignment of error is overruled.

### 5. Spousal Support

{¶ 48} In his fifth assignment of error, Husband argues that the trial court erred in awarding spousal support to Wife. He contends that there was "no justification" for an award of spousal support "in any amount or duration."

{¶ 49} "The trial court has broad discretion in determining whether an award of spousal support is proper based on the facts and circumstances of each case." *Wojanowski v. Wojanowski*, 2014-Ohio-697, ¶ 43 (8th Dist.), citing *Kunkle v.*

*Kunkle*, 51 Ohio St.3d 64, 67 (1990). Therefore, we will not disturb a spousal-support award absent an abuse of discretion.

{¶ 50} When determining whether spousal support is appropriate and reasonable, the trial court must consider the factors set forth in R.C. 3105.18(C)(1). *Kaletta v. Kaletta*, 2013-Ohio-1667, ¶ 22 (8th Dist.). The statutory factors are

> (1) the income of the parties; (2) the relative earning abilities of the parties; (3) the ages and physical, mental, and emotional conditions of the parties; (4) the retirement benefits of the parties; (5) the duration of the marriage; (6) the extent to which it would be inappropriate for a party who will be custodian of the minor child(ren) to seek employment outside of the home; (7) the standard of living of the parties established during the marriage; (8) the relative education of the parties; (9) the relative assets and debts of the parties, including but not limited to any court-ordered payments by the parties; (10) the contribution of each party to the education, training, or earning ability of the other party; (11) the time and expense necessary of the spouse seeking support to acquire education, training, or job experience; (12) the tax consequences for each party of an award of spousal support; (13) the lost income production capacity of either party resulting from that party's marital responsibilities; and (14) any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1)(a)-(n).

{¶ 51} The goal of a spousal-support award is to reach an equitable result. *Hloska v. Hloska*, 2015-Ohio-2153, ¶ 11 (8th Dist.), citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96 (1988). "And while there is no set mathematical formula to reach this goal, the Ohio Supreme Court requires the trial court to consider all 14 factors of R.C. 3105.18(C)(1) and 'not base its determination upon any one of those factors taken in isolation.'" *Id*. at *id*. These factors relate to both the amount and the duration of any spousal-support award.

**{¶ 52}** In the instant matter, the trial court stated that it reviewed the factors set forth in R.C. 3105.18(C)(1) and made the following findings:

(a) Income of the parties: The court compared the parties' annual incomes in the prior four years. The figures reflected that Husband earned significantly more than Wife each year.

(b) Relative earning abilities: The court noted that Husband had historically earned two to four times more than Wife.

(c) Ages and conditions of the parties: The court noted that Husband and Wife are nearly the same age and there was no evidence that either had any physical or mental conditions.

(d) Retirement benefits: The court noted that the parties' retirement benefits exceeded $2.5 million. The court found that the benefits would be divided equally after the exclusion of nonmarital portions. The court further noted that Husband was likely to receive more than half of the benefits due to his employment prior to the marriage.

(e) Duration of the marriage: The court found that the marriage lasted approximately 15 years.

(f) Inappropriateness of seeking employment outside of home: The court noted that Wife worked 32 hours per week, but husband maintained that she could work more. The court noted that Husband worked out of the country at times; during these times, Wife had no assistance with the children. The court noted that these circumstances may have necessitated Wife to work the "slightly reduced" number of hours that she was working at the time of trial and that Wife maintained that her reduced schedule has allowed the parties to avoid after-school childcare costs.

(g) Standard of living: The court noted that the standard of living included expensive vehicles and travel. The court further found that the parties saved money and did not spend the entire household income each year.

(h) Relative extent of education: The court noted that Husband only has a college degree while Wife has a law degree.

(i) Relative assets and liabilities: The court noted that the parties will each have approximately $2 million in assets after the property division.

(j) Contribution to education, training, or earning ability: The court noted that both parties had completed their education prior to the marriage.

(k) Time and expense to acquire education, training or job experience: The court noted that this factor was inapplicable.

(l) Tax consequences: The court noted that any spousal-support award would be taxable to the paying party.

(m) Lost income production capacity: The court noted that Wife earned more than Husband at the beginning of the marriage but that her income declined because of Husband's work schedule and Wife's parenting responsibilities. The court further noted that Wife was "just beginning to regain her potential income."

(n) Other factors: The court found that temporary support had been ordered for two years and direct support for more than a year before that.

(Judgment entry for divorce p. 14-15.)

{¶ 53} The court ultimately found that, after the division of property and consideration of the above factors, it was "appropriate and reasonable for [Husband] to pay non modifiable spousal support to [Wife] in the amount of $1500, for a term of 28 months, commencing February 22, 2025, subject to either parties' [sic] death or Wife's remarriage." (Judgment entry of divorce p. 15.)

{¶ 54} Husband argues that the trial court erred in failing to find that Wife was voluntarily underemployed. He notes that she was 45 years old, well-educated, and a licensed attorney. He asserts that she presented no justification as to why she has not been employed full-time.

{¶ 55} Although Husband may disagree with the amount and duration of the spousal-support award, we find no abuse of discretion under the facts and circumstances presented. The record reflects that the trial court considered the statutory factors outlined in R.C. 3105.18(C)(1)(a)-(n). The judgment entry also contained sufficient details for this court to determine that the spousal-support award was fair and equitable.

{¶ 56} The evidence established that Wife had been the children's primary caregiver since their birth. At the time of trial, she was working a reduced schedule of 32 hours per week. Husband fully acknowledges that his employment requires him to travel 50 percent of the time. Consequently, Wife is the sole caregiver and only available parent during these times. A flexible work schedule supports her ability to provide on-demand care for the children.

{¶ 57} Further the parties were married for nearly 15 years, and Husband earned more than double Wife's income. Twenty-eight months is not a particularly long time period; however, it reflects an appropriate amount of time given the disparity in the parties' incomes and Wife's potential to increase her income in the future.

{¶ 58} Husband's fifth assignment of error is overruled.

### 6. Time Limits on Case Presentation

{¶ 59} In his final assignment of error, Husband argues that the trial court imposed an arbitrary time limit on the presentation of his case-in-chief. Husband argues that the time limits were not fair because there had already been eight days

of trial in which Wife had been permitted to present her own testimony along with that of her witnesses with no time restrictions.

{¶ 60} Prior to the final day of trial, the court issued an order limiting the presentation of Wife's case-in-chief to two hours and restricting Husband's case-in-chief to five hours. The order noted that the parties had already engaged in eight trial days and explained:

> A few days of trial were used for settlement; however, most days, testimony was taken. [Wife] cross-examined [Husband] for part of a day. [Wife] presented several witnesses, some were allowed out of order, and [Wife] testified on her own behalf for approximately one day. [Husband] has been cross-examining [Wife] for approximately 5 days of trial.
>
> The Court finds that [Wife] has substantially presented her case, while [Husband] has spent significant time cross-examining [Wife] and has not presented direct testimony. The Court notes that there are no complex issues in this matter. The issues are simply parenting time, support, and some very straightforward property division. The Court has spent considerable time attempting to bring the parties together on the issues.

(March 19, 2025 judgment entry.)

{¶ 61} We review a trial court's decision to impose time limits on testimony using an abuse of discretion standard. *E.A. v. A.A.*, 2025-Ohio-4583, ¶ 18 (8th Dist.), citing *Machen v. Miller*, 2024-Ohio-1270, ¶ 59 (8th Dist.). The scope of witness examination is governed by Evid.R. 611, which provides that a court shall exercise reasonable control over the questioning of witnesses and presentation of evidence "so as to (1) make the interrogation and presentation effective for the

ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Evid.R. 611(A).

{¶ 62} At the time the trial court implemented the time limits, the trial had already been held on eight separate occasions over a period of close to two years and Husband had cross-examined Wife for nearly five days. The trial court utilized its much needed discretion to bring closure and prevent further delay of the case. "[A] trial court has broad discretion to control its proceedings to enable it to exercise its jurisdiction in an orderly and efficient manner." *M.D. v. M.D.*, 2018-Ohio-4218, ¶ 54 (8th Dist.), citing *State ex rel. Butler v. Demis*, 66 Ohio St.2d 123, 128-129 (1981).

{¶ 63} Moreover, this court has consistently held that a trial court does not abuse its discretion in limiting the presentation of evidence "when there is 'no demonstration of what evidence the party was precluded from presenting because of the time limitation and how the party was prejudiced.'" *Richmond v. Evans*, 2025-Ohio-1835, ¶ 53 (8th Dist.), quoting *M.F.S. v. B.T.S.*, 2024-Ohio-4680, ¶ 39 (8th Dist.), citing *Machen* at ¶ 58; *see also Hunter v. Troutman*, 2025-Ohio-366, ¶ 121 (8th Dist.); *Anderson-Fye v. Mullinax-Fye*, 2024-Ohio-5909, ¶ 108 (8th Dist.).

{¶ 64} Our review of the record fails to reveal what evidence Husband was prohibited from presenting because of the time limitations and how he was prejudiced as a result. Husband did not proffer any specific evidence that he would have presented but for the imposed time limits. "It is basic to appellate practice that error, in the form of excluded testimony, is not reviewable unless there has been a

proffer of the excluded testimony or the content of such testimony is apparent from the circumstances." *Balliett v. Horan*, 1998 Ohio App. LEXIS 3540, *11 (5th Dist. July 27, 1998), citing Evid.R. 103.

{¶ 65} We do not find that the time constraints imposed were an abuse of discretion. Husband's sixth assignment of error is overruled.

## B. Wife's Cross-Appeal

{¶ 66} In her sole assignment of error, Mother argues that the trial court abused its discretion when it delegated its obligation to determine the marital and separate property portion of Husband's retirement assets to a third party. Wife asserts that Husband failed to present any evidence at trial as to the value of his retirement accounts; she maintains that the retirement accounts should be considered marital property and divided equally.

{¶ 67} Regarding the retirement benefits, the trial court stated:

[T]he parties are each awarded as the division of property one half of the marital portion of the following assets accrued from the date of marriage, June 28, 2008, through May 22, 2023, plus or minus growth or loss through a Qualified Domestic Relations Order (QDRO) or pursuant to the requirements of the plan administrator or account holder for: the Chevron Employee Savings Plan (Fidelity), the Chevron Retirement Plan, and the Chevron Retirement NQ Plan and for the [Wife's] JP Morgan IRA x8155. The parties shall cooperate in hiring QDRO Group to determine the amount required to comply with this order and to prepare the QDROs for the division of the assets. Both parties are responsible for the cost of the determination of amounts and the preparation of the QDROs. [Husband] is responsible for contacting QDRO Group.

(Judgment entry for divorce, p. 13.)

{¶ 68} Wife argues that the court's order "absolved" Husband of proving his separate-property claim at trial and permitted him to gather additional documents post-trial to provide to QDRO Group. She asserts that the court did not find that Husband attempted to trace any separate property with regard to the retirement accounts and it did not assign a value to any of his separate-property claims.

{¶ 69} "Marital property" includes all real and personal property that currently is owned by either or both of the spouses, including "retirement benefits [that were] acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i).

{¶ 70} In *Hoyt v. Hoyt*, 53 Ohio St.3d 177 (1990), the Ohio Supreme Court explained that "[i]n determining the proportionality of the pension or retirement benefits, the non-employed spouse, in most instances, is only entitled to share in the actual marital asset." *Id.* at 182. Moreover, "[t]he value of this asset would be determined by computing the ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment." *Id.* Regarding the meaning of "during the marriage," R.C. 3105.171(A)(2)(b) specifically permits the trial court to "select dates that it considers equitable in determining marital property." As the Court in *Hoyt* emphasized, when considering pension or retirement benefits, a trial court must be given discretion and "'flat rules have no place in determining a property division.'" *Id.* at 180, quoting *Cherry v. Cherry,* 66 Ohio St.3d 348, 356 (1981).

{¶ 71} Wife notes that Husband began working at Chevron in 2000, eight years prior to the marriage, but there was no evidence presented as to whether the retirement plans existed at that time, how much money Husband contributed to the accounts, when he became eligible to participate, or the value of his interest in the plan at the time the parties were married.

{¶ 72} Wife is correct that the trial court did not make a determination as to what amount of Husband's retirement accounts was separate property. But the court did express that the parties were each awarded half of the "marital portion" of the retirement benefits — that is, half of the retirement account amounts that accrued from the date of marriage, June 28, 2008, through May 22, 2023. We cannot find that the court delegated any obligation to determine separate or marital property. Noting that Husband began working at Chevron in 2000, which was prior to the parties' marriage in 2008, the court stated that "the Chevron assets should be adjusted for the marital portion." The court ordered the parties to cooperate in hiring QDRO Group to determine the amount required to comply with the order and to prepare the QDROs for the division of the assets.

{¶ 73} A QDRO is a tool used to execute the portion of the divorce decree that divides pension benefits. *Wilson v. Wilson*, 2007-Ohio-6056, ¶ 7, 19.

> A trial court's decision regarding the division of retirement benefits in a divorce action may be implemented through the issuance of a QDRO, which "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits' payable under a retirement plan."

*Powless v. Powless*, 2025-Ohio-5795, ¶ 9 (5th Dist.), quoting *Wilson* at ¶ 6-7. "[A] QDRO may not vary from, enlarge, or diminish the relief that the court granted in the divorce decree, since that order which provided for the QDRO has since become final." *Wilson* at ¶ 18, quoting *Lamb v. Lamb*, 1998 Ohio App. LEXIS 6007 (3d Dist. Dec. 4, 1998).

{¶ 74} Accordingly, Wife's concern that Husband will "create a post-trial claim to separate, premarital property" is unwarranted. The divorce decree provides for an equitable division of the marital portion of the retirement benefits. The QDRO is the vehicle to execute that division. Wife's sole assignment of error is overruled.

{¶ 75} Finding no merit to the errors raised in the appeal and cross-appeal, the judgment of the trial court is affirmed.

It is ordered that appellee/cross-appellant and appellant/cross-appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR